ON THE MERITS
It appears from the evidence of J. C. Steward that on August 23, 1975, he was the owner of a business in Calhoun County, whereat he engaged in general automotive repairs and specialized in transmission repairs. On the night of August 23, 1975, he was in Mobile when he was alerted that his business had been broken into, and he immediately returned to Anniston. He testified that the building that housed his business had two doors and that it was surrounded by a chain fence with two gates, one of which was wide. He kept a service automobile, equipment, tools and supplies in the building. He reached An-niston about 11:00 A.M. on August 23, 1975, and when he reached his place of business, he observed that the front door was “rammed through,” likewise the. gate on 12th Street was “rammed through”. He took an inventory and found missing items. Also he testified that his 1962 service Chevrolet was missing; it was aqua or faded greenish-blue in color. The automobile was a service car that he used to loan customers.
It also appears in his evidence that he next saw the automobile on the afternoon of August 23, 1975, at Wood’s Body Shop where it was impounded; that when he locked his place of business before leaving, the car was in real good condition, but when he saw it at Wood’s, it was bent up, lights were knocked out, bumper was bent, “and it was bent all over.” On cross-examination, the witness stated that, “I saw the building broken into after I came back.”
One Jessie Sears, Jr., testified that around “one or after, somewhere in there, I imagine,” he was near 12th and Clydesdale (the location of the victim’s business) ; that he observed a car come through the door, “backing through the door” of the building and went out on the north side; that he was within ten feet of the car; that it was a blue-looking car; that he could not tell who was in the car.
The witness further testified that in fifteen or twenty minutes he notified the police.
The next witness was police officer John Dryden, to whom witness Sears reported the alleged burglary. He testified about going to the premises and the doors of the building on the Clydesdale side being broken open, and that the back door had been forcibly opened.
John Gilmore, a police officer with the city of Anniston, testified that on the early morning hours of August 23, 1975, that he had an occasion to stop an automobile in which defendant was riding. It was a 1962 Chevrolet, light green in color, with faded paint. When he and his fellow officer attempted to stop it, the vehicle sped away and, “We had to pursue it.” The *401 pursued vehicle struck another vehicle and went into a ditch, “on the other side of the road.” Further, that prior to hitting the ditch, two “subjects jumped out — one on the driver’s side and one on the passenger’s side.” He was able to identify W. E. Thomas who jumped out on the passenger’s side. He could not say that defendant was the other person on the driver’s side.
Officer Billy Lett, riding in the patrol car with Officer Gilmore on the early morning of August 23, 1975, testified that he was driving the patrol car that pursued the Chevrolet that struck a parked vehicle and later turned over in the ditch; that just before the two occupants of the pursued vehicle got out and fled on foot. Also, he testified they pursued the fleeing men on foot; that he pursued defendant, and his partner, the other occupant. He chased the driver two or three hundred yards. The witness identified the defendant as the driver of the pursued vehicle. He did not catch the driver.
The vehicle which the defendant was driving was taken by wrecker service to Wood’s Body Shop and there impounded. The chase began about fifteen minutes after they received information regarding this vehicle.
We think it is clear from the evidence that the impounded vehicle was the automobile that was removed from the victim’s business premises and was in possession of defendant when it was ditched. We also think it is clear that the vehicle was taken from the burglarized business as charged in the indictment; that the circumstantial evidence was sufficient to sustain the guilty verdict of the jury. The motion to exclude the evidence was properly overruled.
It appears that the District Attorney, on redirect, asked the witness Lett a question as follows:
“Q. Let me ask you one or two other questions. You say it was Roy Foster? Did you know it was Roy Foster then?
“A. We had pictures of him. He was escaped at the time.”
Thereupon followed defendant’s objection and motion for mistrial.
The court promptly sustained the objection, The trial court excluded the volunteered answer, “He was escaped at the time.” The court on the motion for mistrial gave lengthy instructions and admonition to the jury not to consider the volunteered answer.
After the court’s instructions, the District Attorney propounded a question to the witness:
“Q. Can you tell the ladies and gentlemen of the jury why you knew it was Roy Foster ? How did you know ?
The court ex mero mo tu stopped the question and observed:
“THE COURT: Just a minute. That type of question will bring out just exactly what we don’t want. Ladies and gentlemen, go outside just a little while under the same instructions I have given you and let me get this straightened out. “(Whereupon, the jury left the courtroom at which time the following proceedings were had) :
“THE COURT: Well, the word Why’, you see, allows the witness to say everything in his mind, and everytime that word, Why’ comes out that just opens the flood gate, and that was why I stopped you. We know from the previous trial that this witness had a picture of Mr. Foster in his possession in the car at the time of the attempted arrest; and we know that — I believe we know he had seen Mr. Foster before enough to be acquainted with him — had seen him one time. You can bring that out and I’ll let you lead him just to bring that out without bringing out that he had had previous charges or that he was a fugitive or anything of that nature because unless you have a record of conviction of a crime involving moral turpitude and the *402 defendant chooses to testify none of that is admissible.”
Following a colloquy among the attorneys and the court, the court overruled defendant’s second motion for a mistrial. Garner v. State, 53 Ala.App. 209, 298 So.2d 630(1).
We fail to find any errors or rulings of the court that were prejudicial to defendant.
The judgment is affirmed.
The foregoing opinion was prepared by the Honorable BOWEN W. SIMMONS, Supernumerary Circuit Judge, serving as a judge of this Court under § 2 of Act No. 288, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.
Affirméd.
TYSON, HARRIS DeCARLO and BOOKOUT, JJ., concur.